RICHARD P. WAIT, Esq., PETITIONER, *v.* SECOND JUDICIAL DISTRICT COURT, THOMAS O. CRAVEN, JUDGE, RESPONDENT.

No. 4968

November 18, 1965                    407 P.2d 912

*Richard P. Wait* and *Roger L. Erickson,* of Reno, for Petitioner.

*Peter Echeverria* and *Alfred H. Osborne,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Petitioner, attorney Richard P. Wait, has filed a petition for a writ of mandamus to compel the respondent district court, and the respondent judge thereof, to allow petitioner to remain as counsel for two of the three defendants in a tort action.

The plaintiff in that tort action was a Mrs. Geraldine Wilson, whose complaint alleged that a grocery clerk, thereafter identified as Boyd Turpin, acting on behalf of his employers and within the scope of his employment, suddenly leaped at plaintiff from a place of concealment and loudly shouted at her while she was engaged, as a business invitee at the Reno Market Spot, in the selection of groceries; that in attempting to evade such immediate and harmful or offensive conduct plaintiff slipped and fell to the floor and suffered injuries, or fainted and fell to the floor with great force and violence, and suffered injuries proximately resulting therefrom. Pearl Davenport and Earl Davenport, her husband, were the owners of said Reno Market Spot, and Boyd Turpin was their clerk.

Attorney Wait was retained by these three defendants to defend the action.[1] On behalf of all three defendants he filed a general denial. However, Wait subsequently learned of serious marital discord between Earl Davenport and Pearl Davenport, culminating in Earl's demand, made in a telephone conversation with Wait, that Pearl recognize Earl's claimed one-half ownership in the market, or Earl would "make sure she lost the case." Earl had previously stated that he had no knowledge of the cause of Mrs. Wilson's fall. It appeared from the deposition of plaintiff Geraldine Wilson that Earl Davenport had called at the Wilson's home and had stated to Mr. Wilson that Boyd Turpin had on prior occasions performed tricks on and attempted to scare other customers; that he, Earl Davenport, had been present at the occasion of Mrs. Wilson's fall and that he had seen Boyd Turpin try to scare her. Thereafter Earl Davenport, on hearing read this version of the facts, acknowledged that the same was correct, and that he intended to testify under oath that those things actually occurred and took place unless Pearl Davenport agreed to give him one half of the Market Spot and other property held by her, all of which was subject to pending divorce proceedings. Mr. Wait's position at that time was that any marital or divorce difficulties then existing between Pearl and Earl Davenport had nothing to do with the defense of Mrs. Wilson's tort action, which was in no way related thereto, and that the division of property interests should have nothing to do with Earl Davenport's testimony as to what truthfully took place in the Reno Market Spot.

Earl's further deposition was scheduled for the following day. He failed to appear and his whereabouts has since been allegedly unknown.

Attorney Wait moved for an order for change and substitution of attorneys for Earl Davenport, attaching supporting affidavits of himself and Turpin reciting Earl's threats "to lose the suit" and Earl's meeting with the Wilsons. Such motion was based upon the recital

---

[1]The complaint was framed on negligence. Assault was alternately pleaded.

that the events and circumstances recited in the affidavits "have created a conflict of interest between said defendant Earl Davenport and defendants Pearl Davenport and Boyd Turpin in the said action"; that Wait no longer desired to be Earl's attorney and requested the right to withdraw as such attorney on behalf of Earl Davenport, because of Earl's refusal and failure to cooperate with him or even to provide information as to his physical location, or where he could be contacted; that at his last telephone conversation with Earl the latter had personally threatened him and "uttered swear words at affiant" and hung up the telephone. But despite his advice to Earl that the dispute over property rights involved in the divorce proceedings had nothing to do with Mrs. Wilson's pending tort action, Wait continued to support his motion for leave to withdraw as Earl's attorney upon the ground of a "conflict of interests" and cited authorities in support of his position.

In opposition to Wait's motion for change and substitution of attorneys for Earl Davenport, counsel for Mrs. Wilson insisted, among other things, that if Wait's assertion as to a "conflict of interest" was to be accepted, it foreclosed his representing any of his three original clients.

We treat his present petition as a petition for a writ of certiorari.

Respondent relies upon Hawkins v. Eighth Judicial District Court, 67 Nev. 248, 216 P.2d 601, and Boyd v. Second Judicial District Court, 51 Nev. 264, 274 P. 7, 9. It also relies on Canon 6 and Canon 37. In Hawkins, supra, this court said: "[A] court has inherent power in a proper case to enjoin an attorney from appearing for a party, the exercise of which [power] is designed to prevent injustice, and the authority for the exercise whereof is independent of any positive provision of law." We there quoted Boyd which explains what constitutes the injustice referred to:

" 'It is well-settled general rule * * * that an attorney cannot represent conflicting interests, or undertake the

discharge of inconsistent duties. When he has once been retained and received the confidence of a client, he cannot accept a retainer from, or enter the services of, those whose interests are adverse to his client *in the same controversy, or in matters so closely allied thereto as to be, in effect, a part thereof.' "* (Emphasis supplied.)

A mere reading of those cases and a consideration of the conflicting interests involved in both will indicate promptly that they are not in point. Respondent also relies upon Consolidated Theatres v. Warner Bros. Cir. Man. Corp., 2 Cir., 216 F.2d 920, which quotes T. C. Theater Corp. v. Warner Bros. Pictures, Inc., D.C., 113 F.Supp. 265, as follows:

" '* * * [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his *adversary* are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.' " (Emphasis added.) This is patently not in point.

Respondent also relies upon Canon 6 and 37 of the Canons of Professional Ethics. We need not quote them in full. Canon 6 provides that "a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

Canon 37 states in part: "A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client." *None of these situations exists here.* Mrs. Davenport and Turpin are not Earl Davenport's adversaries in the *Wilson* suit. That Mr. and Mrs. Davenport are adversaries in their *divorce* suit does not create a conflict of interest in Mrs. Wilson's tort suit against them, and it is virtually impossible to discover any confidential information obtained from the one client which will be used against the other. See In re Dix' Will, 21 Misc.2d 864, 201 N.Y.S.2d 299, affirmed by the appellate division in 11 A.D.2d 555, 199 N.Y.S.2d 958.

It is easy to see how the court below was led into error. Petitioner asked to be relieved of his duty in representing Earl Davenport because of "a conflict of interests" and sought to prove such conflict by the authorities cited by him. In opposition to his petition for leave to withdraw as Earl's attorney, counsel for Mrs. Wilson joined in the contention of conflicting interests but insisted upon Wait's complete withdrawal from the case, arguing with sudden great concern for the interests of Earl Davenport that for Wait to continue in the case on behalf of Pearl "prevents the performance of his full duty to his former * * * client [Earl]."[2]

Be that as it may, the court entered an order "pursuant to [its] inherent powers and sua sponte" because of the conflict of interest as indicated by his affidavit on file in support of his motion to be relieved as attorney for the defendant, Earl Davenport, * * *." The court acted in good faith, accepting the view of both parties that there was a conflict of interest and ruled accordingly—a ruling which would have been correct had the facts been as the court was impliedly led to believe. Even in this court it is hard for Wait to surrender his contention that there was such "conflict of interest" because his clients were fighting among themselves in general and Earl threatened a conflict *in his testimony.* However, despite Wait's use of an inappropriate term to justify his withdrawal as Earl Davenport's attorney, the fact remains that Earl's attempted blackmail in threatening to defeat Pearl's defense against Mrs. Wilson's tort action, Earl's lack of cooperation, his profane language to Wait, his failure to appear for a scheduled deposition, and his final disappearance from the scene, clearly warranted Wait's withdrawal, but did not present a "conflict of interest." Earl's interest was—and is —in avoiding liability for Mrs. Wilson's fall.

It is clear, however, that Wait had to request court

---

[2]This concern was not manifested when counsel for Mrs. Wilson had Earl's answer stricken because of his failure to appear for the taking of his deposition and thereafter caused his default to be entered.

permission before he could leave his client, Earl Davenport, once formal litigation had begun. United States v. Curry, 47 U.S. (6 How.) 106, 111, 12 L.Ed. 363; Tripp v. Santa Rosa St. R. Co., 144 U.S. 126, 128, 12 S.Ct. 655, 36 L.Ed. 371. The client left without counsel must have proper official notice so that other counsel may be obtained within reasonable time to protect the client's rights. Also, all parties must be made aware of any change of opposing counsel, so they can know upon whom to make service of orders, etc. In State v. Bersch, 276 Mo. 397, 207 S.W. 809, the court said:

"The contract of an attorney with his client is an entire and continuous one, and he cannot abandon the service of his client before the termination of his suit without sufficient cause. But there may arise in the conduct of the case reasons why such a withdrawal would not only be permissible but necessary. An attorney, being an officer of the court, is charged with a duty, not only to obey the law, but to preserve his professional integrity. * * * [A]ny conduct on the part of a client during the progress of litigation which would tend to degrade or humiliate the attorney, such as an attempt to sustain his case by any unlawful means, is sufficient cause for withdrawal from the case. (citations)

"The relation of attorney and client is of a most confidential and intimate nature. Their reciprocal duties to each other require the utmost good faith and fidelity. It is as much the duty of the client to submit himself to the direction of his counsel in every matter pertaining to the management of the case as it is of the counsel to use all his endeavors in faithful adherence to his client's interest. If the client should do anything, or attempt anything, which would tend to bring his attorney into disrepute by being connected with unlawful methods, the counsel would do violence to his own professional character if he did not withdraw from the case."

We are satisfied that there was overwhelming reason for Wait to be permitted to withdraw as Earl Davenport's attorney in the *Wilson* suit and the court should

have granted Wait's motion for substitution. However, the court was without power to bar Wait from continuing his representation of Pearl Davenport and Boyd Turpin. It is elementary that an attorney appearing in court to represent his clients, particularly in litigation that has occupied over two years, cannot summarily be removed by the court in the absence of just cause. The only cause recited by the court in support of its enjoining "Richard P. Wait from appearing for and in behalf of any of the defendants" was "because of the conflict of interest as indicated by his affidavit on file * * *." Wait did indeed base his motion to withdraw as Earl Davenport's attorney upon a "conflict of interest." The trial court cannot be criticized for accepting Wait's statement—especially with the "assist" given it by Mrs. Wilson's counsel—but Wait's statement was in error; there was no conflict.

The court made no order upon Wait's motion for permission to withdraw as counsel for Earl Davenport. Its order simply enjoined him from appearing for any of the defendants in the action brought by Geraldine Wilson. To such extent it implicitly granted his motion to withdraw as attorney for Earl, and to that extent is approved.

The balance of the order of injunction must be and it is hereby annulled. The respondent court is hereby directed to enter an order permitting petitioner to continue to represent Reno Market Spot, Pearl Davenport, and Boyd Turpin in said proceeding No. 202798, pending in Department No. 4 of the Second Judicial District Court, entitled Geraldine Wilson, Plaintiff, vs. Reno Market Spot, Pearl Davenport, Boyd Turpin, et al., Defendants.

THOMPSON, J., and ZENOFF, D. J., concur.

McNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District Court to sit in his place.